07-2958, Ms. Long, and Mr. Eberhardt. May it please the Court. My name is Alisa Long and I represent Anthony Burks in this case. I would ask that I be permitted to reserve three minutes for rebuttal. Just a tad. Thank you. You're granted. Thank you. Every year most of us dutifully bring our cars to the inspection station for its annual inspection. We cross our fingers and we hope that we will leave the inspection station with a valid inspection sticker and a few dollars left in our wallet. Your argument here, I take it, is that the light that was in the car which was not operable is not required by PA law, is that correct? That's correct. But if you do have a light, it has to be operable when you go through the inspection lane? It has to be operable when you go for inspection. It does not have to be operable at all times when the vehicle is operated on the highway. It doesn't make a whole lot of sense, does it? It does make sense because the inspection criteria are more stringent, generally speaking, than the equipment requirements. But just thinking, isn't it more important for safety purposes to have a car that's whatever you have on it is operable when you're actually using it as opposed to when it's actually sitting there quietly being inspected? Well, once the vehicle is inspected, then it goes out on the roadway and it is operated or in compliance. So I think... But under your analysis, it's pretty clear that you're right that the statute doesn't specifically require that this optional light be operable. But under your analysis, you would have to pass inspection, but then you could just pull over to the side before you leave the inspection facility, make the light inoperable, and everything's okay until the next inspection. I mean, that's what the law provides, Your Honor. And the court is required to strictly construe the law. There are certain provisions, certain equipment provisions that incorporate the inspection requirements wholesale. Like, for example, I give some examples in my brief. I think it's the suspension system says all components must be in safe operating condition as required by, and then they cite the inspection criteria. For the stop lamps, the wording in the regulation is every required lamp must be in safe operating condition in compliance with the inspection criteria. So we can't ignore that language, required lamp, versus all or every in some of the other equipment provisions. Now, there is a circuit split, is there not, in terms of you've got about six circuits going with you, as I counted up. And the D.C. and the Eighth Circuit don't go with you. Well, I think with respect to the mistake of law issue, the prevailing law here is Delfin Kalina in this circuit. The D.C. court I don't think actually goes the other way because in that case the court makes an explicit ruling that it is undisputed that the alleged violation in that case, which was a license tag propped up in the front windshield, was a violation or was improperly displayed. But then they also have language in there that says notwithstanding, Booker, that's the D.C. case, had in fact committed no traffic violation. The dealer's tag was properly displayed on the rear of the vehicle. The officers mistakenly, to the contrary, when they first saw the license plate displayed in Booker's windshield was objectively reasonable and the traffic stop was therefore lawful. Okay. I think what Booker is making the distinction between is does an actual violation have to occur in order for the stop to be valid? And the answer is no. The correct standard is does the officer have to have a reasonable suspicion to believe that a oncoming and seeing it in the front, seeing that it was improperly displayed, the fact that later when the officer made a U-turn and there was a dealer tag displayed didn't render the officer's reasonable suspicion. The officer still had reasonable suspicions to stop the car despite the fact that it had the rear dealer tag because when the officer made the stop, the passenger and the driver fled or left the vehicle so the officer didn't see the rear dealer tag. What the officer knew was that the front tag was improperly displayed. But that language would appear to line it up with the Eighth Circuit, would it not? Well, the Eighth Circuit, most of the cases cited by the government are actually mistake-of-fact cases and not really mistake-of-law cases. I agree. On mistake-of-law, but Sanders from the Eighth Circuit says that the officers believe that there is a South Dakota law required the taillight to be red. Even if Officer Jorgensen was wrong, we cannot say his belief was unreasonable. In that case, what made the one taillight acceptable or not a violation was the year that the car was manufactured. Maybe the answer is that there's language in cases that is against you, but there's also three times as many circuits in your favor. That's a better answer. Ms. Dorn, assuming that the broken center light did not violate the particular provision that the officer stopped you for, but instead violated a different statute, do you concede that the stop would therefore be constitutional under the Fourth Amendment? If the officer's basis for the stop was a mistake of law, is that what the court's getting at? Yes. But then later it was determined that an officer... And he had a bona fide reason to stop if he would have used that reason. I believe it would have been okay. That stop would have been valid. But I think what we have here is that there is no bona fide reason for the stop. Well, but you can see the officer reasonably thought, although perhaps incorrectly legally, that there was a violation of law. Well, an officer's belief, mistaken belief as to the law, cannot be reasonable. I mean, that's what the case is uniformly held at. A mistake of law is unreasonable. That an officer who's charged with knowing the law and enforcing it cannot be... If he is mistaken, then the stop is invalid. When I say reasonable, in good faith he thought the law was being violated. There's no good faith exception for this, for the mistake of law. All right. Counsel, what if proofs, hypothetically, they could proffer training manuals, a long history of practice that a certain practice was a violation of motor vehicle law. And then upon going back and looking, we all agree then that actually this is not a valid reason. Would that be... I know you're trying to advocate a bright line rule. Either it is or it isn't. If it violates law, great. If not, the stop is invalid. Isn't there something in between? I mean, we obviously don't want police just pulling people over for no reason. But if in their minds the training manuals, everything, prior practice, the sergeant at the barracks says pull people over for this, and they do that, isn't that going to be okay? Isn't that going to... I don't think so. And I can't recall offhand which case, but there is a case where the officer testified that he had made hundreds of stops based upon a mistake of law and the magistrate judge who he had gone in front of had verified that, in fact, he was correct in his understanding of the law. Once it was determined that his understanding was incorrect, that mistake of law was inexcusable. I mean, those stops were invalid based upon, no matter, regardless of whether or not the officer was improperly trained or he got some verification from an outside source that he was doing the right thing and believing that this was a violation. I think it is a bright line rule. Are we making it too difficult for the police? I mean, we're here in a nice quiet courtroom and very smart lawyers, and we can all figure out upon dividing all these different regs next to each other that it was not a proper stop. According to you, the district judge got it wrong as well, so we're all scratching our heads on this. Is it fair, then, to tell the police, sorry, you got it wrong and it's an invalid stop? I don't think it's that complicated, and I do think that law enforcement officers, particularly street officers, as these two officers were, one with 12 years of experience, I think the other with seven years of experience, they're charged with knowing the law. They're making stops based upon these vehicle or the traffic code violations all the time, and they are charged with knowing how many stop lamps are required on the rear of the car. I don't think that's – there are some cases that talk about the ambiguity or the confusion that could result from the reading of the regulations or the statutes, and that's just not what we have here. Well, yeah, but the officer stopped it because it was an unsafe vehicle. Why was that an unreasonable reason to stop the car? There really isn't any evidence to support the fact that the vehicle was rendered unsafe. In particular, the best evidence of that is that it's not required under Pennsylvania law. But obviously the light did not work. The light did not work. But I guess I think you're asking about whether the officer had a duty to inform the motorist or could inform the motorist that the light was not operable. No, my point is that if the light didn't work, the officer felt that there was something unsafe about the vehicle, and then he happened to trip upon the gun. But it would appear to be reasonable if you see a vehicle and one of the lights don't work. I don't think that the record supports the fact that the officer believed that this car was unsafe. I think what the record supports is that the officer believed that that rear stop lamp had to be operable, regardless of whether or not it was a safety issue. If he stops the car for the wrong reason, but it turns out that there is a reason in the record that he could have stopped the car for, would you acknowledge that the stop then is constitutional under the Fourth Amendment? I think that's correct. If there was reasonable suspicion to believe that there was. At this case, he stopped it for one reason, perhaps, but the vehicle obviously had a light that didn't work, and he felt the vehicle was unsafe. I don't believe the record supports that, but I don't know what statute says that an inoperable center brake light renders the car unsafe, and therefore the officer can seize the car based upon that. I see your time is running, and I'd just like to ask, I think the interesting question is isn't this entire matter foreclosed by Brennan? The third point issue? Yes, yes. I think that what Brennan says is that this court, the district courts in this court have the authority to review the prosecutor's decision whether or not to move to the third point, and I do think that the court is obligated to look at the facts and circumstances of this case and determine whether or not the government had a constitutional motive, and I would submit that it does not, and that this case is distinguishable from Brennan. Unfortunately, we don't have any facts in the Brennan opinion about precisely what happened. Drennan. I'm sorry, Drennan, excuse me, in Drennan, but we do know here that we have a very brief evidentiary hearing, two and a half hours. We have two trained professional witnesses. We have no defense witnesses. We have no complex documentary evidence, no experts, and we have Mr. Burks notifying the government prior to the court's ruling on that motion that he intends to enter a guilty plea. So I do believe it is distinguishable. I see my time is up. I'd save it for rebuttal. Thank you very much. Mr. Eberhardt. Good morning. May it please the Court, Robert Eberhardt from the U.S. Attorney's Office. On behalf of the appellee. First of all, do you agree that there was a mistake of law here? No, I don't. I think our position is that. What under PA law says that you can have to have an operable optional light in the back? I think we go through the syllogism of getting to that point in our brief, but essentially what our brief reflects is the fact that regulations promulgated by the Secretary and published established that all original equipment must be operable, and therefore that requirement is incorporated in the statute, and the statute therefore enforces the regulations of the Secretary, and therefore I don't believe. Chapter 4303 says every vehicle operated on a highway shall be equipped with a rear lighting system, including but not limited to stop lamps. If a vehicle is equipped with centrally mounted rear stop light, a decal or overlay may be affixed to the centrally mounted rear stop light if the decal or overlay meets all applicable state and federal regulations. The word if means you could put it on. You don't have to. However. And it says that later on only required lamps must be operable under 67 Pennsylvania Code 175.66a. Right. Pennsylvania has incorporated the federal standards essentially, and as of any vehicle manufactured after I believe it's September 1, 1985, must have this stop light. What year was this vehicle? Pardon? What year was this vehicle? I don't know whether the record clearly reflects that, but it was original equipment on this Nissan, and I believe it was manufactured after 1985, but after 86. Where in Pennsylvania law is it required that you have a centrally mounted rear stop light? As a result of the inspection requirements, every vehicle that has as original equipment, and that is every passenger vehicle that is manufactured after September 1, 1985, that third light, that stop light has to be on that vehicle. It is original equipment, and under the inspection requirements, registration in Pennsylvania is not permitted unless that is an operative light, a stop light. And certainly it has to be inspected. But the only case we found was a Texas state court case which says, look, unfortunately, if they screw up drafting, they screw up drafting. You have to have the light being operable during inspections, but you don't have to have it operable while you're on the road. Well, I think Texas is somewhat unique in its interpretation. I think that other states have interpreted their requirements, that the federal requirements are incorporated into the. Do you have a site? Idaho. I've cited in our brief the Idaho case, and more recently the Tenth Circuit has a non-presidential opinion reviewing Utah law. I think the important thing here is, however, to focus on Officer Hornick and his testimony and Officer Reuter. Both of these officers, well-trained and. The problem that we have, I mean, if I were in their position, I might think the same thing that they thought, that light's not operable, I can therefore stop this vehicle. But you've got the Delfin Kalina case, which appears to side with, you know, the Sixth Circuit's here, which basically says, an officer's Fourth Amendment burden of production is to, one, identify the ordinance or statute that he believed had been violated, and two, provide specific articulable facts that support an objective determination of whether any officer could have possessed reasonable suspicion of the alleged infraction. As long as both prongs are met, an officer's subjective understanding of the law at issue would not be relevant. But here, he's got to be correct on both. Well, if I could go back and look at the law that has been developing in the area of mistake of law, there has not been a separation of reasonable versus unreasonable mistakes of law. Despite the fact that that analysis has existed in the good faith analysis for years. But so far, the circuits that have ruled on good faith, I mean, I think Ms. Long is right that they've said it doesn't apply. Leon analysis from the 84th Supreme Court case doesn't apply to this area. Right. I recognize that. And having been somewhat responsible for Delfin Kalina, I would suggest to the court that Delfin Kalina only goes so far in establishing that the Fourth Amendment is still the touchstone of reasonableness determination. Well, I think what Delfin Kalina says, look, if it's a mistake of fact, usually that's not going to hurt the government, the prosecution. But if it's a mistake of law, it can render a search unreasonable or a stop unreasonable under the Fourth Amendment. Then I just noted to you that basically, they've got to be right. If they're going to stop me on violating Law X, then it's got to be a violation of Law X. Well, I would. Unless maybe conceivably, unless you can point that, well, there was also something else wrong. But I don't know if there was anything else that was wrong with the vehicle. I don't think anything else has to be wrong because I think the Pennsylvania law makes and gives to a police officer authority to enforce the inspection requirements. And I would point to court. Isn't that going a little far, though? If a policeman can enforce the inspection requirements, then virtually you're giving police car plunge to stop just about any vehicle for any violation, not necessarily in the motor vehicle code, but in the inspection code. So that opens up the ability of police to stop a car for virtually any violation. Well, I would establish my position regarding that as one that the officer would have to have a basis in the safety of the vehicle that he is observing. In this particular case. Even though it's not in the motor vehicle code. Correct. Well, then you're saying the officer can stop you for a violation of inspection of vehicles, which is not a violation of the Motor Vehicle Act. But it is a determination of whether or not this vehicle is safe to operate on the highways of the Commonwealth. It's a job for the inspectors of vehicles. That's not a job for law enforcement. Well, I would point the court to 75 Pennsylvania Consolidated Statute Section 4704, which provides that any police officer having probable cause to believe that a vehicle or its equipment is unsafe, not equipped as required, or otherwise not in compliance with the law or regulations may inspect the vehicle or its equipment. In addition, in 4107, which we've cited of Title 75 Pennsylvania Consolidated Statutes, it's a violation to operate any vehicle or combination which is not equipped as required under this part or under department regulations or when the driver is in violation of department regulations or the vehicle or combination is otherwise in an unsafe condition or in violation of department regulations. So there's a broad authority given in Pennsylvania to enforce. Well, if I understand, you're saying that you're incorporating the ability of a police officer to stop for any violation that would have been recognized by the inspection stations. Correct. And I would suggest that a police officer also may have reason to question whether or not the inspector who may not have done his or her job and allowed a vehicle to be on the highway without having a proper light, doesn't that police officer have some responsibility to investigate whether or not that was? Is there any case supporting that position? No, I don't think so. But I would point out that there's no case. There's no authoritative construction of the Pennsylvania Vehicle Code with regard to this third stoplight. And police officers, having been trained in that regard, I suggest we're acting reasonably under the Fourth Amendment to stop this particular vehicle on that night, December 27th, 10 o'clock at night. Officer Reuter makes it very clear that that third stoplight is very important to his enforcement because it is the one light that only operates, is only lit when the brake is applied. The other two lights are lit in nighttime situation even though the brake is not applied. So when the federal regulations were established back in 1980s to establish that this third light is required and all vehicles manufactured after that time, I think it is very specifically a safety requirement. I would suggest that the appropriate approach to this type of case is to recognize that an officer acting on behalf of the regulations is a valid exercise of his authority under the regulations and under the Pennsylvania statutes that I've cited. Counsel, to go back to something Judge Ambrose was talking about, obviously you argued Delfin Kalinas, I'm sure you're familiar with it. We're not writing on a clean slate here. Correct. That opinion sets forth a standard. A mistake, and this is on page 399, a mistake of law is only unreasonable when the officer does not offer facts that objectively show that the identified law was actually broken. If we don't agree with you and find that the law was not broken here, how do you apply the standard? How do we get around this to come to your position? After going in bank. Well, I enjoy the court in bank, but I'm not looking to go that direction, Your Honor. Delfin Kalina was limited in the facts before the court. Delfin Kalina was a swinging rosary hanging from the rearview mirror. The police officer stated that it was his understanding of the law that any object on the mirror was in violation of. And as it turns out, it's only those objects that impede vision. Obviously he was incorrect, and obviously I think the language of the statute made it clear that he was incorrect. Well, how do we apply the standard to get to your result? I'm relying upon the fact that Officer Honick was not wrong, that he was correct, that the regulations of the Department of Transportation were incorporated into the Vehicle Code very specifically. And because those regulations state that original equipment has to be operative, he was acting both reasonably and I think consistent with what the statute and incorporated regulations say. So I hate to put it to you bluntly, but if you're wrong on that, does this get reversed? No. I think the court, my view, the court should engage in a Delfin Kalina plus analysis. I don't think Delfin Kalina should be the limits of examination of whether or not a police officer has violated the Fourth Amendment when he's acting reasonably in reliance upon an interpretation of the Vehicle Code in making a stop. But your adversary's position is he can't be acting reasonably if he's not, if he misunderstands the law. Your position, as I understand from your briefing, is that if he was acting in good faith, even if he were mistaken as to what the law was, is that your position? I think my position is not exactly saying good faith. I'm suggesting that absent authoritative construction of the statute and regulations that says this third light need not be operative, I think this officer was acting reasonably. And therefore, whether you call it good faith, whether you call it reliance upon both instructions, I would agree with counsel for Mr. Burks that there is not a lot in this record to suggest beyond the facts of the stop what this police officer knew. But he has indicated his training has always been that all original equipment has to be operative. And I think that's consistent with the regulations of the Secretary and the Department of Transportation. Your time is running. I want to ask something concerning the sentencing in this case. It seems to me that we have an unconstitutional guideline here. If someone exercises their right to have a suppression hearing of a gun and then are penalized for that suppression hearing by not being given the extra point for acceptance of responsibility, it seems to me that you're penalizing them for exercising their Fourth Amendment right. I don't know why we should let that go. It seems to be an unconstitutional guideline. Well, I would like to at least make it very clear there is no policy of the U.S. Attorney's Office to withhold its application of the one point just because a motion to suppress has been filed. That was the effect of what you did, though. Well, in this case, I believe it's the type of case that the preparation for a suppression hearing is essentially preparation for trial. It goes beyond simply saying that we have a suppression motion filed. We're not going to do that. That is not the policy and that is not what happened here. Yeah, I assume that's true. Your preparation for the suppression hearing was the same virtually as preparing for trial. But nevertheless, if he didn't have the suppression hearing, I assume he would have been entitled to the acceptance of responsibility. It's more likely that he would have. But it's not likely at all if he had the hearing. If the preparation for the suppression hearing was the equivalent of preparation for trial. Well, you can charge him, though, for having a suppression hearing, which is a Fourth Amendment right he had. No, I think that the decision to withhold the and I think Drennan, this falls very, in my view, very right on Drennan. There's no showing in this record that the government made any determination to withhold on the basis of some improper motive. But you acknowledge yourself that it was more likely that he would have gotten the acceptance of responsibility at that point if he didn't have the suppression hearing. Because the government was not required to energize, to respond to the motion to suppress, which was more than simply presentation of a document or this was testimony. You know, there's a record established here. I don't think that was unreasonable on the part of the government to withhold its providing of that. He did get two points. And, in fact, the judge in the district court reduced the criminal history calculation by one so that his guidelines sentence was reduced. But you can't deny he could have gotten even more. It was very probable, even possible, not even possible, probable. He could have done better if he didn't have the suppression hearing. And he may have gotten the very same sentence, even if the government moved for the one point. So the message to a criminal defendant who's a felon accused of being in possession of a firearm improperly is you better not ask for a suppression hearing. You better not violate your, you better not exercise your Fourth Amendment right, otherwise you're going to be punished. Well, I don't think it's a matter of punishment. It's withholding of where the government has had to respond with its resources. I mean, the whole idea within the guideline, the advisory guidelines, is that this one point, which would be provided is in response to the fact that the government has not had to and the law enforcement has not had to and there's not been a devotion of additional resources to respond to the defense. Thank you very much. Thank you. Ms. Long, I guess, how do you respond to the point that Mr. Eberhardt made in quoting the other provision, I guess it was like Part 47 of the Pennsylvania Code? That code goes to the safe operation of the vehicle. Yes, ma'am. I don't think the record, when I was answering the questions, supports that the officers believed that this vehicle was unsafe and that if this court were to conclude that, it would be, it just isn't supported by the evidence in the record. I want to just correct one thing on that issue as well, that there's a distinction between rear lamps that are lit when you turn on your headlights so that motorists behind you can see the back of your car and stop lamps. There are two separate sets of lamps here, so that it's not as though the only lamp that is illuminated when you apply the brake is the center lamp. That is incorrect. I also wanted to follow up on Judge Cowan's question about the guideline and how it penalizes defendants. I think what's key here, too, is that this is not the defendant's decision to file and litigate a motion to suppress. This is an area that is reserved for counsel to make that decision, file the motion, and litigate it. And counsel has to follow the professional dictates, and oftentimes that's in conflict with what the defendant wants. And it is wholly unrelated to the defendant's acceptance of responsibility for his actions. So I do think, and one other thing I would say, that prior to the 3E1.1b's amendment, when the courts had discretion to make a decision about the third point, courts were, in most circuits, prohibited from penalizing defendants. If courts were prohibited from doing it, why should the government be allowed to do it? It should be the same standard, the same analysis. How do you distinguish Drennan? Well, I think what Drennan did is that they did recognize that courts can remedy the government's refusal. And Drennan is based upon the facts in that record, which are different from the facts in our record. That there were, at least as far as we can tell, three witnesses. We're not sure whether there was cross-examination. We don't know the complexity of the hearing. We don't know if there's documentary evidence. We don't know if there are any defense witnesses. The opinion doesn't tell us that in Drennan. In our case, we do know what we have, and we know that it was brief, that there were two witnesses, that there was no cross-examination of the defense witnesses. So I do think that the cases are distinguishable. One other thing I would say, the government urges a Delfin-Kalina Plus analysis. And I think if you look at the cases that were relied upon by Delfin-Kalina in its original opinion, the Fifth Circuit cases, the Ninth Circuit, and the Eleventh Circuit, they just don't support an extension of Delfin-Kalina to instances where an officer who correctly interpreted the law could not find a violation, just not support it. So I'd ask the Court to reverse and vacate. Thank you. Thank you very much. Thank you to both counsel for well-presented arguments. We'll take the matter under advisement and call the next case, which is Ascendant.